15 CV 00429

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

Ron Heron, Individually and On Behalf of All
Others Similarly Situated,

                Plaintiff,

    v.

SEADRILL LIMITED, JOHN
FREDRIKSEN, PER WULLF, and RUNE
MAGNUS LUNDETRÆ,

                Defendants.

**CLASS ACTION COMPLAINT FOR
VIOLATIONS OF THE FEDERAL
SECURITIES LAWS**

**JURY TRIAL DEMANDED**

Civil Action No.



JAN 2 1 2015

U.S.D.C. S.D. N.Y.
CASHIERS

---

Plaintiff Ron Heron ("Plaintiff"), by his undersigned attorneys, hereby brings this class

action complaint for violations of the federal securities laws ("Complaint") against the above-

named Defendants. The allegations against Defendants are based on personal knowledge as to

Plaintiff's own acts and on information and belief as to all other matters, such information and

belief having been informed by the investigation conducted by and under the supervision of

Plaintiff's counsel, which included, *inter alia*, review of documents filed with the U.S. Securities

and Exchange Commission ("SEC") by Defendant Seadrill Limited ("Seadrill" or the

"Company"), conference call transcripts, media and analyst reports, and publicly available news

sources about the Company. Plaintiff believes substantial additional evidentiary support will

exist for the allegations herein after a reasonable opportunity for discovery. On behalf of himself

and the class he seeks to represent, Plaintiff alleges as follows:

## NATURE OF THE ACTION

1.    This is a securities class action on behalf of Plaintiff and a proposed class of

persons and entities who purchased or acquired American Depository Receipts ("ADRs") of

Seadrill between May 28, 2014 and November 25, 2014, inclusive (the "Class Period"). Plaintiff

seeks to pursue remedies against Seadrill and certain of its senior executives under §§10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), and Rule 10b-5 promulgated thereunder.   Defendants made a series of materially false and misleading statements and omissions during the Class Period which artificially inflated the value of Seadrill ADRs.   Later public disclosures caused the Seadrill ADR prices to decline, causing injury to Plaintiff and the Class.

2.      Seadrill, based in Bermuda, is the world's largest offshore drilling contractor, providing offshore drilling services to the oil and gas industry worldwide.   During the Class Period, Seadrill accumulated a $12.3 billion debt load and billions of dollars in financial commitments on new ships and rigs it had under contract to be built ("new-builds").

3.      During the Class Period, Defendants represented to investors that Seadrill was different from its competitors, as it had newer equipment, limited exposure to the current dayrate weakness, and   access to diverse funding sources.   Additionally, the company asserted that despite turbulence in the oil industry "Seadrill "[was] on track to achieve Ebitda of $10 million per day."   Defendants also repeatedly misled investors regarding the sustainability of the Company's dividend—which Seadrill increased by $0.02 to US$1.00 per share, on the first day of the Class Period.   Notwithstanding that the Company was experiencing the same negative industry trends as its competitors, Defendants repeatedly touted that the "that they were "highly confident that the dividend [was] sustainable."

4.      On July 8, 2014, Seadrill attempted to retire some of its outstanding debt through an incentive exchange offer for stock and cash.   Due to a decline in the price of Seadrill shares, the exchange offer was suddenly cancelled.

5.      Two days later, on July 10, 2014, Seadrill announced that it successfully obtained refinancing commitments from banks, emphasizing that "[h]aving access to numerous markets reduces refinancing risk and leads to decreased cost of capital that ultimately maximizes value creation for shareholders. *Seadrill's diversified funding strategy has resulted in the Company being in the best possible financial situation in the Company's history, with significant financial flexibility to support the dividend . . . .*" (Emphasis added).

6.      The price of Seadrill shares having been artificially stabilized as a result of the announcement, Seadrill proceeded to complete the exchange offer, which retired hundreds of millions of dollars of debt at an economically profitable exchange ratio.

7.      Throughout the Class Period, Seadrill continued to represent that its backlog and strong balance sheet were sufficient to support paying the $4 annual dividend through 2016 and expressly represented that it had affirmatively decided to continue paying the dividend to the exclusion of alternative uses for its capital. Based on the high 18.7% yield on its shares and the promise of continued dividend payments, Seadrill ADRs traded at inflated prices throughout the Class Period, reaching a Class Period high of over $38 per ADR in July 2014.

8.      When Seadrill finally reported its third quarter 2014 financial results (for the period ended September 30, 2014) on November 26, 2014, before the opening of trading, Seadrill shocked the market by publicly disclosing for the first time that in addition to missing the profit targets it had led the market to expect, Seadrill was indefinitely suspending its dividend, citing the need to pay down its debt to strengthen its balance sheet. Seadrill also disclosed that its Board of Directors (the "Board") had authorized the repurchase of up to 10% of outstanding shares.

9.      As a result of this news, on November 26, 2014, the price of Seadrill ADRs decreased from $20.71 to $15.99 per ADR on heavy trading volume. As of January 20, 2015, Seadrill ADRs are trading at $10.26.

## JURISDICTION AND VENUE

10.     This Court has jurisdiction over the subject matter of this action pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa. In addition, because this is a civil action arising under the laws of the United States, this Court has jurisdiction pursuant to 28 U.S.C. §1331. The claims alleged herein arise under §§10(b) and 20(a) of the Exchange Act and Rule 10b-5 promulgated thereunder.

11.     Venue is proper in this District pursuant to Section 27 of the Exchange Act, 15 U.S.C. §78aa, and 28 U.S.C. §1391(b) because Seadrill ADRs were traded on the New York Stock Exchange ("NYSE") in this District throughout the Class Period and many of the acts and transactions that constitute the violations of law complained of herein, including the dissemination to the public of untrue statements of material facts, occurred in this District.

12.     In connection with the acts alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to the U.S. mails, interstate telephone communications and the facilities of national securities exchanges.

## PARTIES

13.     Plaintiff Ron Heron, as set forth in his accompanying Certification which is incorporated by reference herein, purchased Seadrill ADRs during the Class Period and has been damaged thereby.

14.     Defendant Seadrill is a Bermuda-based offshore drilling contractor that provides offshore drilling services to the oil and gas industry. Although its common stock has been listed

on the Oslo Exchange since 2005 and its ADRs listed on the NYSE since April 2010 (under ticker symbol "SDRL"), Seadrill's 2013 annual report states "[t]he NYSE listing is intended to be the Company's 'primary listing' and the OSE listing is intended to be the Company's secondary listing." As of December 31, 2014, the Company had over 468 million shares of common stock outstanding.

15.     Defendant John Fredriksen ("Fredriksen") is, and was throughout the Class Period, Chairman of the Board of Seadrill and previously served as Seadrill's President. Fredriksen, a Norwegian-born Cypriot citizen, founded Seadrill and is Seadrill's largest shareholder, beneficially owning approximately 115 million shares of common stock. Fredriksen has served as Chairman of the Board, President and a director of Seadrill since its inception in May 2005. Fredriksen has established trusts for the benefit of his immediate family, which control Hemen Holding Limited ("Hemen"), Seadrill's largest shareholder. Fredriksen is Chairman, President, Chief Executive Officer and a director of a related party, Frontline Ltd., a Bermuda company listed on the NYSE. He is also a director of a related party, Golar LNG Limited, a Bermuda company listed on Nasdaq Global Market, whose principal shareholder is World Shipholding Limited, a company indirectly influenced by trusts established by Fredriksen for the benefit of his family. Fredriksen is also a director of a related party, Golden Ocean Group Limited, a Bermuda company whose principal shareholder is Hemen.

16.     Defendant Per Wullf ("Wullf") is, and was throughout the Class Period, the Chief Executive Officer ("CEO") and President of Seadrill. Wullf was appointed CEO and President of Seadrill in July 2013. Wullf is a Danish citizen and resides in London, England.

17.     Defendant Rune Magnus Lundetræ ("Lundetræ") is, and was throughout the Class Period, the Chief Financial Officer ("CFO") of Seadrill. Lundetræ was appointed CFO and

Senior Vice President in February 2012. Before his current position, Lundetræ was Finance Director for Seadrill Americas and Commercial Director for Seadrill Europe (now North Atlantic Drilling). He was also CFO for Scorpion Offshore when Seadrill acquired the company in July 2010. From 2001 to 2007, Lundetræ was an auditor for KPMG and PricewaterhouseCoopers in Norway. He registered as a Certified Public Accountant (CPA) in Norway in 2005. Lundetræ is a Norwegian citizen and resides in London, England.

18.     Fredriksen, Wullf and Lundetræ are referred to collectively as the "Individual Defendants." Seadrill and the Individual Defendants are referred to collectively as the "Defendants."

## CLASS ACTION ALLEGATIONS

19.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all purchasers of the Seadrill ADRs during the Class Period (the "Class"). Excluded from the Class are Defendants and their families, the officers and directors of Seadrill at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns, and any entity in which Defendants have or had a controlling interest.

20.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Seadrill ADRs were actively traded on the NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes there are thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Seadrill and/or its transfer agent and may be notified of the pendency of this action using the form of notice customarily used in securities class actions.

21.     Plaintiff's claims are typical of the claims of the members of the Class because Plaintiff has the same interests as the other members of the Class and Plaintiff and all members of the Class are similarly affected by Defendants' wrongful conduct in violation of the federal securities laws complained of herein.  Plaintiff does not have any interests that are adverse or antagonistic to those of the Class.

22.     Plaintiff will fairly and adequately protect the interests of the Class.  Plaintiff is committed to the vigorous prosecution of this action and has retained counsel competent and experienced in this type of litigation.

23.     Questions of law and fact common to the members of the Class predominate over any questions which, if they exist, may affect individual Class members.  The predominant common questions of law and fact include, *inter alia*:

(a)     whether Defendants violated the Exchange Act as alleged herein;

(b)     whether public statements made by Defendants misrepresented material facts about the business, operations and management of Seadrill; and

(c)     the extent to which the members of the Class sustained damages as a result of Defendants' wrongful conduct in violation of the federal securities laws as alleged herein and the proper measure of damages.

24.     A class action is superior to all other available methods for the fair and efficient adjudication of the claims against Defendants, since joinder of all members is impracticable. Moreover, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation render it impossible for members of the Class to individually redress the wrongs done to them.  Plaintiff anticipates no difficulty in the management of this action as a class action.

## FACTUAL ALLEGATIONS

25.    Seadrill is the world's largest offshore drilling company by market valuation. The Company is part of the empire of shipping magnate Fredriksen, who has served as Chairman of the Board and a director of Seadrill since its inception in May 2005.

26.    Seadrill operates in three segments:  Floaters, Jack-up Rigs, and Tender Rigs. The Floaters segment offers services such as drilling, completion, and maintenance of offshore exploration and production wells under contracts relating to semi-submersible rigs and drill ships for harsh and benign environments in mid, deep, and ultra-deep waters.  The Jack-up Rigs segment provides services that include drilling, completion, and maintenance of offshore exploration and production wells under contracts relating to jack-up rigs for operations in harsh and benign environment. The Tender Rigs segment operates self-erecting tender barges and semi-submersible tender rigs used for production drilling and well maintenance in Southeast Asia and West Africa.  Most of Seadrill's Tender Rigs were sold in 2012.

27.    Seadrill's customers include oil and gas exploration and production companies, including integrated oil companies, independent oil and gas producers, and government-owned oil and gas companies.  Seadrill has operations in the nations of Angola, Brunei, Republic of the Congo, Indonesia, Malaysia, Nigeria, Norway, Thailand, Brazil, the United States and the United Kingdom, among others.

28.    The offshore drilling market is split into four broad segments: shallow water and ultra-deepwater, and then old rigs and new rigs.  Typically, ultra-deepwater rigs command high day-rates and long-term contracts give stability for rig owners.  Seadrill has exposure to both shallow and deepwater markets, but the ultra-deepwater market accounts for the majority of its fleet.

29.     Newer rigs offer performance and safety features that an aging fleet cannot and therefore typically find work more easily than older rigs. This is the latest bifurcation in the market with new rigs having strong utilization rates and older rigs (particularly 30+ years) having a hard time finding work and in many cases being scrapped by rig owners. Seadrill has been aggressively buying new-builds and now has the youngest fleet in the industry.

30.     More than half of the new oil reserves found in 2013 were in ultra-deepwater and more than three quarters were offshore.

***Seadrill's Historically Strong Dividend***

31.     Seadrill's represents its dividend policy as follows:

> Seadrill has an objective to generate competitive returns to its shareholders. This objective will be supported by regular distribution of cash dividend. The level of dividend will be guided by earnings expectations, market prospects, current capital expenditure programs as well as investment opportunities. [1]

32.     Based on the Company's practice of historically paying a strong and consistent dividend, coupled with its repeated promises to maintain that strong dividend, Seadrill was named as a Top 10 dividend paying energy stock as recently as September 2014 by *Dividend Channel*, which publishes a weekly "DividendRank" report.

33.     The September 2014 DividendRank report emphasized that among energy companies, Seadrill shares displayed both attractive valuation metrics and strong profitability metrics. The Seadrill share price of $27.68 at the time represented a price-to-book ratio of 1.3 and an annual dividend yield of 14.46%. By comparison, the average energy stock in *Dividend Channel's* coverage universe yielded 4.5% and traded at a price-to-book ratio of 2.8.

---

[1]   Seadrill   website   Investor   relations   FAQ   (last   visited   on   January   13,   2015):
http://www.seadrill.com/investor-relations/faqs

34.     The DividendRank report also emphasized the strong quarterly dividend growth history at Seadrill, and its favorable long-term multi-year growth rates in key fundamental data points, noting that the annualized dividend paid by Seadrill was $4.00 per share, then-currently being paid in quarterly installments.

## DEFENDANTS' MATERIALLY FALSE AND MISLEADING STATEMENTS

35.     On May 28, 2014, the first day of the Class Period, the Company issued a press release reporting its financial results for the first quarter of 2014, ended March 31, 2014. The press release announced that the "Board has in connection with the disclosure of first quarter results evaluated the current dividend level and prospects and has resolved to increase the regular quarterly dividend by 2 cents to US$1.00 per share. The Board is highly confident that the dividend is sustainable in the coming years." Additionally, the company asserted that "[b]ased on expected solid operational performance for the rest of the year and the commencement of additional drilling units, the board is pleased to see that Seadrill is on track to achieve Ebitda of $10 million per day." In the press release, defendants also touted that the Company had "decided to create an additional dividend capacity fund by preserving approximately 20% of any net proceeds from MLP dropdowns. The remaining 80% will be used for reduction of existing debt and future growth."

36.     Additionally, the press release stated that although the Company's "major competitors . . . needed to make "significant upgrade investment," decisions due to the age of their equipment, "Seadrill [was] in the beneficial position of not being forced to take many of these types of decisions." Further, the Company's "cash flow profile [was] strong due to a large contracted backlog with limited exposure to the current dayrate weakness."

37.     During the earnings call of the same day, defendant Wulff stated in pertinent part, the following: